760 A.2d 663

**Mildred WATERS**

v.

**PLEASANT MANOR NURSING HOME and Injured Workers' Insurance Fund.**

No. 104, Sept. Term, 1999.

Court of Appeals of Maryland.

Oct. 10, 2000.

---

84

Arthur L. Buist (the Law Offices of Art Buist, on brief), Baltimore, for Petitioner.

James A. Haynes, Towson, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

HARRELL, Judge.

Mildred Waters, Petitioner, challenges a judgment of the Circuit Court for Baltimore City. The Circuit Court affirmed an Order of the Workers' Compensation Commission (Commission) limiting an award of permanent total disability, paid by Pleasant Manor Nursing Home (the Nursing Home) and the Injured Workers' Insurance Fund (the Fund), Respondents, to the statutory amount in effect at the time of her compensable injury, rather than that applicable when she was determined to be permanently totally disabled. The Court of Special Appeals affirmed. *Waters v. Pleasant Manor Nurs-*

*ing Home,* 127 Md.App. 587, 736 A.2d 358 (1999). We granted Petitioner's petition for writ of *certiorari.*[1] We affirm.

Petitioner asks us to consider the following issue:

Is the total amount of Petitioner's permanent total disability compensation established by the statute in effect when Petitioner became permanently totally disabled?

I

On 6 May 1973, Petitioner, a nursing assistant at the Nursing Home in Baltimore, was injured when she and another nurse's aide attempted to pull a patient out of a chair. According to the accident report that documented Petitioner's injury, the other aide mistakenly released the patient, shifting all of the patient's weight on Petitioner and causing Petitioner and the patient to fall to the floor. As a result of the fall, Petitioner sustained a back injury.

Petitioner filed for workers' compensation benefits with the Commission on 15 May 1973. The Commission held a hearing on 10 August 1973 to address Petitioner's claim and found that Petitioner experienced a compensable accidental injury on 6 May 1973. The Commission awarded her temporary total disability benefits in an Order dated 5 September 1973. The Order directed the Nursing Home and the State Accident Fund,[2] its insurer, to pay workers' compensation benefits to Petitioner for five weeks, subject to further consideration.

Although she returned to work at the Nursing Home for a brief time, Petitioner's physical condition did not improve, and she returned to the Commission for modification of her benefits. On six separate occasions from 1973 to 1987, the Commission held several hearings and issued Orders modifying Petitioner's award, ordering temporary total disability and permanent partial disability benefits.

---

1. *Waters v. Pleasant Manor Nursing Home,* 356 Md. 495, 740 A.2d 613 (1999).

2. The State Accident Fund later was renamed the Injured Workers' Insurance Fund. *See* 1990 Md. Laws, ch. 71.

Upon the expiration of the permanent partial disability payments in 1991, pursuant to an Order dated 3 February 1987, Petitioner again requested a hearing to reopen her case. In a 13 June 1991 Order, the Commission found Petitioner permanently totally disabled and ordered permanent total disability payments, pursuant to Maryland Code (1957, 1972 Cum.Supp.), Article 101 § 36(1)(a).[3] The Commission further ordered the payments to be paid retroactively from 28 March 1985, with the total benefit not to exceed $45,000. Due to the retroactivity of this award, after credit for previous payments, Petitioner received her last compensation payment on 9 July 1991.

At a hearing held on 27 September 1993, Petitioner requested that the Commission reopen her claim for continuing permanent total disability benefits. She argued that the date of the Commission's finding that she was permanently totally disabled should govern the amount of her benefits, rather than the date of the injury. By this argument, Petitioner sought to take advantage of the amended version of Article 101 § 36(1)(a), which the Legislature had enacted on 24 May 1973, shortly after her injury occurred.[4] The amended statute

---

3. Maryland Code (1957, 1972 Cum.Supp.), Article 101 § 36(1)(a) stated:

Permanent Total Disability—(a) In case of total disability, adjudged to be permanent sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee by the employer or insurer during the continuance of such total disability, not to exceed a maximum of sixty-six and two-thirds per centum of the average weekly wage of the State of Maryland as determined by the Department of Employment Security, as provided in § 36(2) of this article and not less than a minimum of twenty-five dollars per week, unless the employee's established weekly wages are less than twenty-five dollars per week at the time of injury, in which event he shall receive compensation in an amount equal to his average weekly wages *but not to exceed a total of $45,000.00.* Loss or loss of use of both hands, or both arms, or both feet and both legs, or both eyes, or of any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts. (Emphasis added).

4. The amended version of Article 101 § 36(1)(a), effective 1 July 1973, is found in Maryland Code (1957, 1974 Cum.Supp.), and states:

removed the $45,000 compensation "cap" and, therefore, she would be entitled to permanent total disability benefits as long as she remained permanently totally disabled. The Commission denied Petitioner's request by Order dated 8 October 1993. No judicial review was sought of this Order.

Petitioner filed a written issue with the Commission on 24 April 1996, essentially again requesting a reopening of her claim. During Petitioner's tenth and final hearing on 30 September 1996, she asked the Commission to resume payment of permanent total disability benefits pursuant to the amended statute. The Commission, in a 7 October 1996 Order, denied the petition.

On 6 November 1996, Petitioner filed an action in the Circuit Court for Baltimore City seeking judicial review of the 7 October 1996 Commission Order. The Circuit Court, after holding a hearing on 1 December 1997, affirmed the Commission's Order on 4 December 1997. Petitioner then appealed to the Court of Special Appeals. The Court of Special Appeals first addressed Respondent's argument that the Circuit Court lacked jurisdiction, pursuant to Maryland Code (1974, 1991 Repl.Vol.), Labor and Employment Article, § 9–736(b),[5] to

---

*Permanent Total Disability*—(a) In case of total disability, adjudged to be permanent sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee by the employer or insurer during the continuance of such total disability, not to exceed a maximum of sixty-six and two-thirds per centum of the average weekly wage of the State of Maryland as determined by the Department of Employment Security, as provided in § 36(2) of this article and not less than a minimum of twenty-five dollars per week, unless the employee's established weekly wages are less than twenty-five dollars per week at the time of injury, in which event he shall receive compensation in an amount equal to his average weekly wages but not to exceed a total of $45,000.00; *provided, however, that if the employee's total disability shall continue after a total of $45,000.00 has been paid, then further weekly payments at the rate previously paid shall be paid to him during such disability.* Loss or loss of use of both hands, or both arms, or both feet and both legs, or both eyes, or of any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts. (Emphasis added).

5. Maryland Code (1974, 1991 Repl.Vol.), Labor and Employment Article, § 9–737(b) states:

review the Commission's 7 October 1996 Order because the Order was a denial of reconsideration rather than a ruling on the merits following the grant of a rehearing or reopening request. *Waters,* 127 Md.App. at 590, 736 A.2d at 360. The intermediate appellate court concluded that Petitioner "appropriately" had asked for her claim to be reopened in light of Maryland's broad reopening statute, Maryland Code § 9–736, which "not only gives the Commission continuing jurisdiction over each case, it also invests the Commission with blanket power to make such changes as in its opinion may be justified." *Waters,* 127 Md.App. at 591, 736 A.2d at 360 (quoting *Subsequent Injury Fund v. Baker,* 40 Md.App. 339, 345, 392 A.2d 94 (1978) (discussing Article 101, § 40, the precursor to Md.Code § 9–736)). As to the substantive issue, the Court of Special Appeals affirmed the Circuit Court judgment, holding that Petitioner was not entitled to a higher benefit level because the statute in effect on the date of injury, Maryland Code (1957, 1972 Cum.Supp.), Article 101 § 36(1)(a), capped her benefits at $45,000.

## II

Before we reach the substantive issue presented by this case, we pause to consider Respondents' argument that the Circuit Court did not have jurisdiction to review the Commission's Order of 7 October 1996. Relying on our recent decision in *Blevins v. Baltimore County,* 352 Md. 620, 724 A.2d 22 (1999), Respondents assert that a claimant may not seek judicial review of the Commission's mere refusal to reopen or reconsider an earlier decision when the previous decision settled the merits of the claim. *See also Robin Express, Inc.*

---

(b) *Continuing powers and jurisdiction; modification.*—(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the last compensation payment.

*v. Cuccaro*, 247 Md. 262, 264–65, 230 A.2d 671, 672 (1967) (stating that if a court or administrative body refuses to reopen a case, "it decides only not to interfere with its previous decision which stands unimpeached as of its original date"); *Gold Dust Corp. v. Zabawa*, 159 Md. 664, 666, 152 A. 500, 501 (1930) (explaining that "it is regularly considered that a decision declining to interfere with a previous decision is not one intended to be included under a general statutory allowance of appeal from any decision").

In *Blevins*, we consolidated for argument and decision the cases of *Blevins v. Baltimore County* and *Wills v. Baltimore County*, 120 Md.App. 281, 707 A.2d 108 (1998). The *Wills* case presented a procedural issue, not present in the *Blevins* case, whether a Commission decision amounted to a mere refusal to reopen or reconsider a case, or whether it had issued a new, and therefore appealable, order. We explained:

> [w]hen, upon the filing of an application to reopen or on its own initiative, the Commission enters a new order that differs in any material way from the earlier order, whether or not the end result is the same, it is obvious that the matter has been reconsidered and a new holding made. Conversely, if the Commission denies an application without discussing the merits or propriety of the earlier order, it is evident that the earlier order has not been reconsidered and no new holding has been made. The prospect of *ambiguity* arises when the Commission considers an application to reopen and, without making clear its intent, enters an order declining to revise the earlier order. The reviewing court then must attempt to determine from the record whether the Commission has, in effect, granted the application and affirmed its earlier ruling or has simply declined to reconsider that ruling. In trying to fathom the Commission's intent, the court should consider, among other things, whether evidence was taken on the application, whether, in entering its new order, the Commission discussed or made findings with respect to the correctness, validity, or propriety of the earlier order, and whether, in denying relief, the

Commission either acted summarily, without assigning reasons, or focused only upon defects in the application itself. *Blevins*, 352 Md. at 633–34, 724 A.2d at 28 (emphasis added).

Respondents argue that the Commission's 7 October 1996 Order in the present case, after applying the *Blevins* test, amounts to a decision not to reopen or reconsider its prior suspension, or "capping," of Petitioner's disability payments at $45,000. According to Respondents, although the Commission held a hearing on 30 September 1996 regarding Petitioner's 24 April 1996 filing of issues, no evidence was taken at the hearing; there was no discussion regarding the correctness of the earlier Order; the Commissioner that presided over the hearing merely inquired into the argument presented by Petitioner; and the Order issued after the hearing stated that "the said Petition is hereby denied," without further elaboration. Respondents' view of these proceedings is that the Commission made no new holding and that Petitioner's right to seek judicial review of the Commission's "cap" on her benefits expired, at the latest, thirty days after the Commission's 8 October 1993 Order. *See* Maryland Code (1991, 1999 Repl.Vol.), Labor and Employment Article, § 9–737 (stating that unless the claimant has filed a petition for review within thirty days of the previous appealable decision, his or her right to appeal has expired).[6] It is necessary first to examine the hearing of 27 September 1993, which lead to the 8 October 1993 Order, and compare it to the 30 September 1996 hearing (and its precipitating paperwork), which lead to the 7 October 1993 Order, to determine the legal effect of the latter hearing and Order relative to the former hearing and Order.

---

6. Maryland Code (1991, 1999 Repl.Vol.), Labor and Employment Article, § 9–737 states, in pertinent part:

An employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commission, including the Subsequent Injury Fund and the Uninsured Employers' Fund, may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the Commission's order by:

(1) filing a petition for judicial review in accordance with Title 7 of the Maryland Rules.

The 27 September 1993 hearing was held, apparently at Petitioner's former counsel's request,[7] to discuss Petitioner's position that she was entitled to more benefits because it was the date of the Commission's determination that she was permanently totally disabled that was controlling, not the date of her injury. Petitioner's former attorney, however, did not present any specific support or meaningful legal arguments at the hearing to support this proposition.[8] In response, the Commissioner seemed to reprimand counsel for not being prepared to address fully the reason for the hearing and stated, before concluding the hearing, that the Commission should not be required to withhold its ruling until Petitioner's counsel was prepared. Her counsel then stated that he was "already submitting a memorandum today." No such memorandum is to be found in the record. The resultant 8 October 1993 Commission Order found that Petitioner was not entitled to continuing benefits pursuant to the 13 June 1991 Order and suspended further payments.

On 24 April 1996, Petitioner's present attorney filed a written issue with the Commission asking for the "[r]esumption of payments for permanent total disability ordered by the Order of June 13, 1991 and suspended by the Order of October 8, 1993." At the 30 September 1996 hearing on this written issue, the question of which statute to apply in determining the maximum amount of benefits available to Petitioner was raised. The Commissioner and counsel did not discuss the issue at length, however, perhaps because the Commis-

---

7. Our examination of the record did not reveal a document filed by Petitioner, or her then counsel, with the Commission requesting a hearing, asserting issues, or otherwise explaining why the 27 September 1993 hearing was held. The transcript of that hearing, however, suggests that Petitioner had raised issues with regard to medical bills (a matter which counsel expressly reserved for later consideration) and "an allowance in excess of $45,000.00 that's been paid to the claimant for permanent total disability."

8. Petitioner's former attorney did mention briefly *Cooper v. Wicomico County*, 278 Md. 596, 366 A.2d 55 (1976); however, he employed the case only to observe that based on the decision "there still might be an open question of law."

sioner already had read Petitioner's written, pre-hearing memorandum of law on the issue. The following discussion occurred:

COMMISSIONER: I have a memo, please don't read it to me. Didn't [Commissioner] Jefferson deal with this?

[PETITIONER'S COUNSEL]: Not really. They went on the record, very briefly, and the earlier transcript doesn't indicate much of anything except for the fact that her earlier counsel had a suggestion about the case of *Cooper v. Wicomico County*, but he really wasn't prepared to deal with that.

COMMISSIONER: What do you mean, he put out an order. What do you mean he wasn't able to deal with it?

. . .

COMMISSIONER: Did you appeal this?

[PETITIONER'S COUNSEL]: I was not her counsel at this time.

COMMISSIONER: Was the order appealed?

[PETITIONER'S COUNSEL]: That particular order, no. However, that order was merely suspended, not to deny the matter.

COMMISSIONER: Okay. What do you want me to do today?

[PETITIONER'S COUNSEL]: Your Honor, I would like you to, based on what is contained in the memorandum that I have written here, because I believe that there is a very strong case that Mildred Waters was not—was not permanently disabled until 1985.

That's very clear on the record, and with the orders, in fact, there were findings prior to the 1991 order that she was indeed not permanently totally disabled.

Also, the legislative history of this where the legislature initially designed the law to be retroactive, that portion was found to be not the case in the case of *Cooper v. Wicomico County* .

The distinction with *Cooper*, that person was already on temporary total disability at the time that the order—at the time that the legislation was passed.

In Mildred's case she was not found so until many years later.

COMMISSIONER: Thank you. That's it.

The Commission, in its 7 October 1996 Order, simply stated that Petitioner's "Petition is hereby denied." It appears that the 30 September 1996 hearing was the first time that substantive law, possibly bearing on the written issue common to both the 1993 and 1996 hearings, was presented and considered; however, the 7 October 1996 Order provides no insight into the Commission's intent, leaving somewhat ambiguous whether there was an actual reconsideration granted and a "new" decision made on the issue.

Our review of the record leads us to conclude that the present case is equally as equivocal as that encountered in the *Wills* issue in *Blevins*. In *Wills*, Ms. Wills suffered a work-related injury on 26 March 1992. *Blevins*, 352 Md. at 627, 724 A.2d at 25. She was unable to return to work and retired on 8 February 1993. *Id.* Ms. Wills received retirement benefits, and after a hearing, was awarded workers' compensation benefits. *Blevins*, 352 Md. at 628, 724 A.2d at 25. At the initial hearing, Baltimore County, Ms. Wills's employer, failed to raise "the issue of whether any workers' compensation benefits to which she might be entitled were subject to set-off by the retirement benefits." *Id.* In January 1996, Baltimore County filed issues with the Commission asking that her retirement benefits be set-off against her compensation award, pursuant to "the 1991 rewriting of Article 101, § 33, in the form of § 9–610 of the Labor and Employment Article." *Id.* The Commission denied relief, and the Circuit Court for Baltimore County reversed. *See Blevins*, 352 Md. at 630, 724 A.2d at 26. On appeal, Ms. Wills argued "that the Commission's decision declining to revise its ... order was not subject to judicial review, and that the circuit court should therefore have dismissed the county's petition." *Id.* The Court of Special Appeals found that the Commission's decision was "an

appealable new holding." *Id.* (internal quotation marks omitted) (quoting *Wills,* 120 Md.App. at 294, 707 A.2d at 115).

After articulating the analytical standard for an examination of whether such a Commission Order is subject to judicial review (*supra* at p. 90–91), we applied the standard to the facts of *Wills.* We found that the Commission's 1996 action was ambiguous because it did not summarily "deny the ... [employer's] application," and the Commission held a hearing at which "it [in oral remarks] denied the ... [employer's] request for set-off solely on the ground that the right to and amount of any set-off had to be determined at the time of the initial award and could not be considered later." *Blevins,* 352 Md. at 634, 724 A.2d at 28–29. Furthermore, the Commission's 1996 Order simply denied the employer's request for a set-off. *Id.* In Ms. Waters's case, the Commission did not deny her claim summarily; there was some discussion of the arguably applicable law at the hearing, and the Order denied the claim without explanation.

Although Respondents' argument, in the present case, may have as much merit as Wills's employer's claim in *Blevins* did, we shall follow the route that we took in *Blevins* and not rest our decision on the jurisdictional issue. *Blevins,* 352 Md. at 631, 724 A.2d at 29. Rather, we shall focus on the substantive issued decided in the present case by the Court of Special Appeals, for which we granted *certiorari.* As was the case with *Blevins,* "reasonable minds could differ, on this record, of what the Commission's true intent was with respect to the application." *Blevins,* 352 Md. at 635, 724 A.2d at 29. The Commission's 7 October 1996 Order denied Petitioner's request to resume permanent total disability; whether a reopening merely was denied is debatable. Furthermore, the Commission did hold a hearing on 30 September 1996 during which the Commission discussed the previous orders, the injury, and the applicable statute and proffered case law. Nonetheless, we echo advice given in *Blevins* that we

> strongly urge the Commission ... when considering applications to revise an earlier final decision, to make clear whether it is denying the application or granting it and

entering a new order. That is not an onerous burden, and it will help remove the uncertainty with respect to the right of the applicant to seek judicial review....

*Id.*

## III

We must determine whether Petitioner's entitlement to a specific maximum amount of permanent total disability compensation is determined as of the time that she was injured, 6 May 1973, or when the Commission determined that she was permanently totally disabled, 13 June 1991. If the date of injury controls, Petitioner already has received maximum compensation and is entitled to no further compensation as provided by the then controlling Maryland Code (1957, 1972 Cum.Supp.), Article 101 § 36(1)(a). If the date of the Commission's determination of her permanent total disability controls, Petitioner is entitled to additional benefits beyond $45,-000, as provided in the amended version of Article 101 § 36(1)(a).

■ The general rule in workers' compensation benefit cases is that the date of injury controls for determining compensation benefits. *See DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 447, 677 A.2d 73, 80 (1996) (holding that, in accidental injury cases, the date of the accident controls and "not the date that the employee became aware of a compensable injury or disability"); *Shifflett v. Powhattan Mining Co.*, 293 Md. 198, 200, 442 A.2d 980, 982 (1982) ("The general rule is that benefit increases are not retroactive and that the benefit level in effect at the time of the injury controls." (citing 2 A. LARSON, WORKMEN'S COMPENSATION LAW § 60.50 (1981 rev. ed.))); *Mutual Chem. Co. of America, v. Pinckney*, 205 Md. 107, 113, 106 A.2d 488, 491 (1954) ("The claimant's rights are governed by the statute at the time of the injury and not as of the time of filing the claim." (citing *Meyler v. Mayor and City Council of Baltimore*, 179 Md. 211, 17 A.2d 762 (1941); *Furley v. Warren–Ehret Co.*, 195 Md. 339, 73 A.2d 497 (1950))); *Gorman v. Atlantic Gulf & Pac. Co.*, 178 Md. 71, 74, 12 A.2d

525, 527 (1940) (conceding that an amended statute, increasing the amount of receivable benefits after the date of injury, does not apply); *Baltimore County v. Fleming*, 113 Md.App. 254, 258, 260, 686 A.2d 1161, 1164 (1996) (finding that the law in effect at the time of the injury applies).

Petitioner argues that the Commission erred in making its determination and suggests that the statute in effect on the date the Commission found her permanently totally disabled should govern the award that she receives rather than the date of her initial injury. In support of this proposition, Petitioner cites *Shifflett v. Powhattan Mining Co.*, 293 Md. 198, 442 A.2d 980 (1982).

In *Shifflett*, we addressed a legislative increase in the amount of benefits in an occupational disease case that may be awarded under the Workers' Compensation Act and which date is the date of injury-"last injurious exposure" or "the event of disablement." *Shifflett*, 293 Md. at 199, 203, 442 A.2d at 981. The claimant, Shifflett, was exposed to asbestos dust sometime between 1950 and 1959 while working at Powhattan Mining Company (Powhattan). *Id.* Shifflett then left Powhattan and worked in a number of jobs, primarily as a security guard. *Id.* In 1975, Shifflett was diagnosed with pulmonary asbestosis, among other ailments, as a result of his previous exposure to asbestos. *Id.* Between Shifflett's "last injurious exposure" to asbestos, as late as 1959, and his "date of disablement," 1975, "the statutory ceiling" for workers' compensation benefits was twice raised. *Id.* We held that the date to be employed in determining benefits in occupational disease cases is the "event of disablement" or in other words, "the date when the claimant becomes permanently totally disabled." *Shifflett*, 293 Md. at 206, 442 A.2d at 983 (holding that "any increase in benefits which becomes effective after the date of last exposure to the occupational disease, but before the event of disablement resulting from that disease, would apply to the disability claim").

The *Shifflett* case is distinguishable from the present one because *Shifflett* involved an occupational disease whereas

Petitioner suffered an accidental injury. We acknowledged, in *Shifflett,* a difference between the two types of claims. We stated that an occupational disease case, such as the asbestosis case in *Shifflett,* is "unlike claims arising out of industrial accidents, in which some disability ordinarily is manifest at the time of the accidental injury or relatively soon after;" while an occupational disease is " 'insidious in its onset' and 'can be well advanced before a claimant is aware that it has' " manifested itself. *Shifflett,* 293 Md. at 200–01, 442 A.2d at 982 (quoting *Babcock & Wilcox, Inc. v. Steiner,* 258 Md. 468, 474, 265 A.2d 871, 875 (1970)). We further analogized that the event of disablement for occupational diseases is the equivalent of the date of injury for accidental injury cases in determining workers' compensation benefits. *Shifflett,* 293 Md. at 202, 442 A.2d at 983 ("The [Workers' Compensation] Act's occupational disease provisions as a whole reflect that the General Assembly considers disablement from occupational disease as an event which is then statutorily treated much like an injury caused by an accident." (referring to Md.Code (1957), 1979 Repl.Vol.), Art. 101 § 22(a)).

Petitioner argues here that the finding that she was permanently totally disabled as of 28 March 1985 qualifies as a determination of the date of disability as required by our holding in *Shifflett.* Petitioner is mistaken. She fails to take into account a fundamental difference in determining benefits for occupational diseases versus accidental injuries. We previously have determined that occupational disease benefits should be analyzed differently than accidental injury benefits. It has been established that the date of injury for determining benefits for an occupational disease is the date of disablement and the date of determination for accidental injuries is the date of occurrence of the injury. This difference in analysis is based upon the fundamental differences in definition between an occupational disease and an accidental injury.

The Court of Special Appeals has stated aptly that "the defining difference between accidental injury and occupational disease is that the cause of the former is unusual or

unexpected and the cause of the latter is usual and a risk inherent to the nature of employment." *Luby Chevrolet v. Gerst,* 112 Md.App. 177, 191, 684 A.2d 868, 875 (1996). In addition, an occupational disease often develops over time and will manifest itself at some point after the encounter with its causation. *See Gerst,* 112 Md.App. at 193, 684 A.2d at 876. The court further noted that the Workers' Compensation Act treats accidental injuries differently from occupational diseases. *Gerst,* 112 Md.App. at 192, 684 A.2d at 875. The significant difference for the present case is that for an occupational disease to be compensable under the Act, "it must cause some disablement." *Gerst,* 112 Md.App. at 192–93, 684 A.2d at 876 (citing *Miller v. Western Electric Co.,* 310 Md. 173, 185–86, 528 A.2d 486 (1987); *Lowery v. McCormick Asbestos Co.,* 300 Md. 28, 47, 475 A.2d 1168 (1984); *Shifflett,* 293 Md. at 201, 442 A.2d 980) (referring to Md.Code (1991 Repl.Vol., 1996 Suppl.), Labor and Employment Article, § 9–502(a)). For an accidental injury to be compensable, however, no disability is required; all that is required is the date of occurrence. *See Gerst,* 112 Md.App. at 193, 684 A.2d at 875.

The Court of Special Appeals acknowledged that "[t]he date of disablement in an occupational disease case serves the same purpose as the date of occurrence in an accidental injury case." *Id.* The date of occurrence is often easy to identify. In the present case, the date of occurrence is when Petitioner, while aiding a patient, fell and injured her back. The date of occurrence for an occupational disease is not so easily identifiable because of the possible incubation period and late manifestation of symptoms. Therefore, the Legislature saw fit to fix the date for the determination of benefits in occupational disease cases by employing the date of disablement rather than the date of occurrence. *See Lowery,* 300 Md. at 47, 475 A.2d at 1178 ("It is plain that the Legislature was aware of the inherent difference between disability produced by accidental injury-with a fixed date of occurrence-and that produced by the more insidious occupational disease-the inception of which most frequently is clouded and the disabling effect of which may occur years after its commencement."); *Gerst,* 112 Md.

App. at 193, 684 A.2d at 875. It is necessary to fix the date in such a manner so as "to limit proof of causation problems and potential limitation problems." *Gerst,* 112 Md.App. at 193, 684 A.2d at 875.

Petitioner also relies upon *Cline v. Mayor and City Council of Baltimore,* 13 Md.App. 337, 283 A.2d 188 (1971), *aff'd,* 266 Md. 42, 291 A.2d 464 (1972) (per curiam opinion adopts opinion of Court of Special Appeals), to reason that when the Commission ordered Petitioner to be paid permanent total disability payments as of 28 March 1985, Petitioner's right to receive permanent total disability payments vested, and therefore, Petitioner should receive permanent total disability payments from that date on, and the statute in effect on that date should be the one applied in calculating the maximum amount of benefits available to Petitioner. Petitioner's reliance upon *Cline,* however, is misplaced.

In *Cline,* the Court of Special Appeals was presented with the question of whether a surviving dependent of a deceased worker should recover the amount of death benefits provided by the statute in effect on the date of the injury or the amount permitted by the amended statute on the date of the death caused by the initial injury. *Cline,* 13 Md.App. at 340, 283 A.2d at 190. In *Cline,* Appellant's husband sustained an accidental injury at his place of employment on 3 April 1967. *Cline,* 13 Md.App. at 339, 283 A.2d at 189. On 2 June 1967, Appellant's husband died from his 3 April 1967 injury. *Id.* On 1 June 1967, the day before his death, the statute was amended to raise the maximum death benefits that a dependent could receive as a result of a death caused by an on-the-job accidental injury. *Id.* The court held that the statute in effect on the date of death is the applicable statute when the death is caused by the initial accidental injury because the survivor's benefits vest on the date of death. *Cline,* 13 Md.App. at 340–41, 283 A.2d at 190–91.

The court first pointed to a distinction present in the relevant statute. According to the statute, dependents may receive benefits under the following two scenarios: (1) when

the employee dies from a cause unrelated to the compensable injury and there is a remaining award based on permanent total or permanent partial disability compensation; or (2) when the employee dies as a result of the compensable injury and death occurs within five years of the injury. *See Cline,* 13 Md.App. at 340, 283 A.2d at 190. According to the court, in the first scenario, the benefit belongs to the employee, and "[t]hose who take, in the event of his death, take under him, and not independently." *Id.* The court elaborated that the dependent's right to the benefits is governed by the statute in effect at the time of the injury. *Id.* (citing *Furley,* 195 Md. 339, 73 A.2d 497). In the second scenario, the court stated that "although the survivor's right to death benefits arises out of the compensable injury, it is the employee's death itself which is the compensable event, and the right of the surviving dependents to death benefits is separate and independent of the injured employee's rights and does not depend upon whether compensation was paid to the injured workman during his lifetime." *Cline,* 13 Md.App. at 340–41, 283 A.2d at 190 (citing *Sea Gull Specialty Co. v. Snyder,* 151 Md. 78, 134 A. 133 (1926)). Thus, the survivor's claim for benefits vests when the employee dies, as was the situation in *Cline,* and the employee's claim for benefits vests at the time of the injury.

Contrary to Petitioner's argument, her situation is more analogous to the first scenario, rather than the second scenario, discussed in *Cline.* Petitioner is not a dependent nor has there been a death; rather, the reasoning of the *Cline* court demonstrates that, in determining benefits for employees who suffer accidental injuries, it is the date of the injury that controls. The court stated that

> the amounts of compensation payable to the workman and his surviving dependents in cases where death is caused by the injury are separate and distinct, undoubtedly because their respective causes of action are based on different compensable events, *viz.,* injury in the case of the workman, and death in the case of the dependents.

*Cline*, 13 Md.App. at 343, 283 A.2d at 192. Petitioner's claim is based on the compensable event of the injury and not on the later determination of permanent total disability.

Because we conclude that the date of injury is the controlling date for determining which statute applies for ascertaining the maximum amount of workers' compensation payments available to Petitioner, we find it unnecessary to address Petitioner's reliance on case law from other states that conclude differently than we do here.[9] Petitioner also argued that because we have found that the four types of compensation available under the Act-temporary total, temporary partial, permanent partial, and permanent total-are distinct in that the benefits paid for one type of disability cannot be offset to reduce the benefits payable for a different type of disability,[10] then Petitioner's right to collect permanent total disability payments is entirely separate from whatever rights she may have had to collect temporary total disability payments. This argument is superfluous because, as just explained, the date of injury is controlling for the determination of the amount of benefits that can be awarded for the different types of compensation and the maximum amount that may be awarded. When we declared that the four types of compensation are unique, we also did not declare that the determination that a claimant has a permanent total disability replaces the date of the accidental injury.

Additionally, the amended statute makes clear that it does not apply to accidental injuries sustained prior to its effective date of 1 July 1973. It is well established that in

---

9. See *Petition of Markievitz*, 135 N.H. 455, 606 A.2d 800 (1992); *Claim of Nielsen*, 806 P.2d 297 (Wyo.1991); *Allen v. Kalamazoo Paraffine Co.*, 312 Mich. 575, 20 N.W.2d 731 (1945); *LeBrun v. Woonsocket Spinning, Co., Inc.*, 106 R.I. 253, 258 A.2d 562 (1969).

10. See *Sealy Furniture of Md. v. Miller*, 356 Md. 462, 468–69, 740 A.2d 594, 598 (1999) (noting that the Court Appeals has determined that the four types of compensation "are different compensable events, each justifying a separate award"); *Gorman v. Atlantic Gulf & Pac. Co.*, 178 Md. 71, 75, 12 A.2d 525, 527 (1940) ( finding that the four types of compensation "are four different compensable results").

construing statutes, our goal is to actualize the intent of the Legislature. *See Martin v. Beverage Capital,* 353 Md. 388, 399, 726 A.2d 728, 733 (1999); *Polomski v. Mayor and City Council of Baltimore,* 344 Md. 70, 75, 684 A.2d 1338, 1340 (1996); *Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81, 83 (1996); *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Soper v. Montgomery County,* 294 Md. 331, 335, 449 A.2d 1158, 1160 (1982). The primary point of derivation for determining the Legislature's intent is the language of the statute. *See Martin,* 353 Md. at 399, 726 A.2d at 733 (citing *Schuman, Kane v. Aluisi,* 341 Md. 115, 119, 668 A.2d 929, 931 (1995)); *Polomski,* 344 Md. at 75, 684 A.2d at 1340 (citing *Bowen,* 342 Md. at 454, 677 A.2d at 83). If the language of the statute is unclear or ambiguous, we turn to "the canons of statutory construction to guide our inquiry." *Polomski,* 344 Md. at 75, 684 A.2d at 1340 (citing *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 511–16, 525 A.2d 628 (1987)). If the language of the statute is clear on its face and in its context, then we do not ordinarily need to turn to the Legislative history. *See Martin,* 353 Md. at 399, 726 A.2d at 733; *Polomski,* 344 Md. at 75, 684 A.2d at 1340 (citing *Rose v. Fox Pool,* 335 Md. 351, 359, 643 A.2d 906, 910 (1994); *Scaggs v. Baltimore & W.R. Co.,* 10 Md. 268 (1856)).

 When interpreting the language of a statute, it is imperative to give the words their "ordinary and common meaning within the context in which they are used." *Polomski,* 344 Md. at 75, 684 A.2d at 1340 (citing *Kaczorowski,* 309 Md. at 514, 525 A.2d at 632). Ascertaining the ordinary and common meaning of the statute, in turn, requires putting its language into context, which includes incorporating the overall purpose of the statute into its interpretation. *See Polomski,* 344 Md. at 75–76, 684 A.2d at 1340 (citing *Kaczorowski,* 309 Md. at 514, 525 A.2d at. 632); *see also* Md.Code (1991, 1999 Repl.Vol.), Labor and Employment Article, § 9–102 ("This title [Workers' Compensation] shall be construed to carry out its general purpose."). As we have stated:

[I]n interpreting and determining legislative intent, we must look to the plain language of the enactment, while keeping

in mind its overall purpose and aim. Only when both of these tasks are done concurrently do we obtain an accurate interpretation of the statute.

*Martin,* 353 Md. at 400, 726 A.2d at 734. Moreover, the statute should be examined in its entirety and not just as isolated, independent sections. *See Martin,* 353 Md. at 399, 726 A.2d at 734 (citing *Williams v. State,* 329 Md. 1, 15–16, 616 A.2d 1275, 1282 (1992)).

We have discussed before that the Workers' Compensation Act was enacted originally and has developed as protection for families, employees, employers, and the public. The Act provides shelter to employees and to their families "from the various hardships that result from employment-related injuries." *Martin,* 353 Md. at 398, 726 A.2d at 733 (citing *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733, 734 (1980)); *see also Polomski,* 344 Md. at 76–77, 684 A.2d at 1341 (stating that "the Act maintains a no-fault compensation system for employees and their families for work-related injuries where compensation for lost earning capacity is otherwise unavailable" (citing *Bethlehem–Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799, 802 (1947); *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544, 546 (1944))). The Act secures employers from "the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of 'caring for the helpless human wreckage found [along] the trail of modern industry.'" *Polomski,* 344 Md. at 76, 684 A.2d at 1341 (alteration in original) (quoting *Liggett & Meyers Tobacco Co. v. Goslin,* 163 Md. 74, 80, 160 A. 804, 807 (1932); *Brenner v. Brenner,* 127 Md. 189, 192, 96 A. 287, 289 (1915)). Furthermore, the Act is to be construed liberally to ensure that its general purpose is realized, and the outcome of conflicts in interpretation should favor the claimant. *See Martin,* 353 Md. at 398, 726 A.2d at 733 (citing *Bethlehem–Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 45 A.2d 79 (1945)).

During the 1973 session, the Legislature amended the subsection of Article 101 § 36 dealing with permanent total

disability awards. The changes were made effective 1 July 1973. The amended statute allowed injured workers who became permanently totally disabled after 1 July 1973 to continue collecting benefits for as long as they remained permanently totally disabled as determined by the Commission. The Legislature added a limitation that explicitly provided that the new, higher benefit "cap" was *not* applicable to claims involving accidental injuries sustained prior to 1 July 1973. The enacting clause provides, in pertinent part:

> SECTION 2: AND BE IT FURTHER ENACTED, That this Act shall *not* apply to accidental injuries or occupational diseases *sustained prior to July 1, 1973.*
>
> SECTION 3: AND BE IT FURTHER ENACTED, That this Act shall take effect July 1, 1973.

Chapter 671 of the Acts of 1973 (emphasis added).

It is clear from this language that the increase in benefits does not apply to Petitioner. Petitioner was injured on 6 May 1973, and as we stated, it is this date, the date of injury, which controls the amount of benefits to which she is entitled and determines the statute that is to apply-the statute in force on the date of injury. The above amended statute clearly does not apply because (1) it became effective on 1 July 1973–after the date of injury, and (2) the amended statute states that it does "not apply to accidental injuries or occupational diseases sustained prior to July 1, 1973." This language is in no way ambiguous and, furthermore, its interpretation furthers the purpose of the Act-providing benefits for injured employees and guaranteeing the predictability of those benefits for employers.

Respondents persuasively argue that an interpretation to the contrary would be antagonistic to these purposes of the Act. Under our interpretation, all employees are treated equally, dependent only upon whether the date of their injuries falls before or after the date of 1 July 1973. Under an interpretation permitting the amended statute to apply to Petitioner's case, those injured on the same day as Petitioner, 6 May 1973, could receive different benefits depending upon

when they became permanently totally disabled. This situation also would produce unpredictable amounts of benefits that employers and their insurers would be required to pay. As we have stated, "[s]uch an interpretation is consonant not only with the plain meaning of the words, but also with the principle of predictability underlying the entire statutory scheme of workers' compensation." *DeBusk,* 342 Md. at 440, 677 A.2d at 77.

Additionally, permitting the use of the statute in effect when permanent total disability was determined, rather than the date of the accident, leads to increased costs in litigation, delay, and inquiries into the quagmire of what is termed vested rights, for which Petitioner pleads. If the controlling date is the date of permanent total disability, there needs to be fact-finding by the Commission, which may lead to litigation regarding whether the date has been ascertained correctly. By the same token, "[t]he date of an accident can in general be externally verified and known to all without a fact-finding process." *Id.*

The problems of dealing with, and the unpredictability of determining, the vesting of rights was addressed by the Court of Special Appeals in *Fleming,* 113 Md.App. 254, 686 A.2d 1161. *Fleming* is similar to the present case, in that both involved a question of which statute applies in determining workers' compensation benefits—in *Fleming,* the statute in effect on the date of the injury in 1984 or the statute in effect when the case was heard in 1996. The court refused to reach the issue of statutory interpretation because the law dictates that "it is the law in effect at the time of the accidental injury in 1984 that governs." *Fleming,* 113 Md.App. at 256, 686 A.2d at 1162. The court, in explaining the dearth of reasons for delving into the statute, cited a number of cases in which we have held that the date of injury controls.[11] *Fleming,* 113

---

11. *See Fikar v. Montgomery County,* 333 Md. 430, 432 n. 1, 635 A.2d 977 (1994); *Shifflett v. Powhattan Mining Co.,* 293 Md. 198, 200, 442 A.2d 980 (1982); *Mutual Chemical Co. of America v. Pinckney,* 205 Md.

Md.App. at 260, 686 A.2d at 1164. The court did state, however, that despite these cases "it is important for practitioners and courts to be cognizant of the statutory genesis of the concept that the law in effect at the time of the injury applies. Departure from the statute has the potential to raise certain red herrings such as the issue of vested rights." *Id.*

*JUDGMENT AFFIRMED, WITH COSTS.*

107, 112, 106 A.2d 488 (1954); *Furley v. Warren–Ehret Co.,* 195 Md. 339, 347–48, 73 A.2d 497 (1950).