935 A.2d 450

**Owen E. SMITH, Jr.**

v.

**HOWARD COUNTY, Maryland.**

**No. 1367 Sept. Term 2006.**

Court of Special Appeals of Maryland.

Nov. 6, 2007.

Damon A. Trazzi of Timonium, for appellant.

Jeffrey Y. Laynor (Cornblatt, Bennett, Penhallegon & Roberson, PA on the brief), Baltimore, for appellee.

Argued before SHARER, WOODWARD, JAMES A. KENNEY, III, (Retired, specially assigned), JJ.

KENNEY, J.

In June of 2004, appellant, Owen E. Smith, Jr., a retired 26–year veteran of the Howard County Police Department, filed a claim with the Workers' Compensation Commission (the "Commission"). Appellee, Howard County, did not file a timely response and the Commission entered an order in favor of Smith. Howard County appealed the Commission's order by requesting a jury trial in the Circuit Court for Howard

County. At the close of evidence, the circuit court granted Howard County's motion for judgment. On appeal, we address the following questions:

I. Was sufficient evidence presented to the jury to defeat Howard County's motion for judgment?

II. Can a claimant, who prevailed before the Commission on an uncontested claim because of the employer's late filing, establish a *prima facie* case for worker's compensation before a jury in the circuit court based solely on the claimant's victory before the Commission?

For the following reasons, we shall affirm the judgment of the circuit court.

### FACTUAL AND PROCEDURAL HISTORY

On October 14, 1975, Smith began his service with the Howard County Police Department. He graduated from the police academy in 1976 and was immediately assigned to patrol duties. With the exception of a brief assignment in traffic enforcement in 1988, Smith was a patrol officer until his retirement on July 1, 2002.

On June 24, 2004, Smith filed a worker's compensation claim with the Commission. He alleged injuries to his hips and knees from continuously entering and exiting his patrol vehicle over a 26–year period, which was aggravated by the weight of the equipment routinely carried on his person. On the claim form, Smith wrote: "Repeated entering/exiting of police vehicle in performance of duties, wearing gun belt, ballistic vest, etc. Over 26.3 years averaged 800–1000 entries/exits per month." The stated date of disablement was October 5, 2002.[1]

Howard County did not file a response and, on August 6, 2004, the Commission issued the following order on Smith's uncontested claim:

---

[1] Other than the claim form, no evidence was submitted to the Commission.

After due consideration of the above entitled case, it is determined that the claimant sustained an accidental injury or occupational disease/illness as defined in The Labor and Employment Article, 9–101(b) or (g) Article 101, Sec. 67(6) *arising out of and in the course of employment on 10/05/2002*
. . . .

\* \* \*

It is, therefore, this day, *08/06/2004* by the Workers' Compensation Commission ORDERED that the claim for compensation filed with this Commission in this case by the said claimant against the said employer and insurer be held pending until such time as the nature and extent of the claimant's disability, if any, can be determined.

On August 19, 2004, Howard County filed an appeal with the circuit court and requested a jury trial. After both parties presented their evidence, Howard County moved for judgment, pursuant to Maryland Rule 2–519. The court granted Howard County's motion. Judgment was entered on August 23, 2006. Smith filed a notice of appeal on that date.

## *DISCUSSION*

### I. The Burden of Production at Trial

Smith claims that he suffered an "occupational disease" during the course of his employment.[2] Under Maryland Code Annotated (1991, 1999 Repl.Vol.), § 9–502(d)(1) of the Labor and Employment Article ("LE"), an employer is liable to his or her employees for an "occupational disease" that:

---

2. In its order, the Commission stated that "the claimant sustained an *accidental injury* or occupational disease/illness...." (Emphasis added.) In order to establish an "accidental injury," Smith would have to demonstrate that, on a particular date, he suffered a specific injury. *See Waters v. Pleasant Manor Nursing Home,* 361 Md. 82, 98, 760 A.2d 663 (2000) ("[T]he date of determination for accidental injuries is the date of occurrence of the injury" and the injury is one that is "unusual or unexpected."). Nothing in the record suggests that Smith sustained an "accidental injury." He did not allege an "accidental injury" before the circuit court, and does not do so on appeal.

(i) is due to the nature of an employment in which the hazards of the occupational disease exist and the covered employee was employed before the date of disablement; or (ii) has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed before the date of disablement[.]

LE § 9–101(g) defines an "occupational disease" as "a disease contracted by a covered employee: (1) as the result of and in the course of employment; and (2) that causes the covered employee to become temporarily or permanently, partially or totally incapacitated."

We have described an occupational disease as,

one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant. If, therefore, a disease is not a customary or natural result of the profession or industry, per se, but is the consequence of some extrinsic condition or independent agency, the disease or injury cannot be imputed to the occupation or industry, and is in no accurate sense an occupation or industry disease.

*LeCompte v. United Parcel Service, Inc.*, 90 Md.App. 651, 654, 602 A.2d 261 (1992).

To satisfy the burden of production, a party must establish "some minimal evidence." *Darcars Motors of Silver Spring, Inc. v. Borzym,* 150 Md.App. 18, 53, 818 A.2d 1159 (2003). The burden is "slight," but "more than a 'mere scintilla of evidence, ... more than surmise possibility, conjecture'" is required. *Mc Quay v. Schertle* 126 Md.App. 556, 569, 730 A.2d 714 (1999) (citation omitted). To prevail on his claim, Smith was, therefore, required to produce some evidence, even if minimal, to demonstrate: (1) that the alleged occupational disease is inherent in the nature of the work of a police officer; (2) that his injuries were causally related to his performance

of that work; and (3) that as a result, he was incapacitated as of October 5, 2002, the date of his alleged disablement. *See Luby Chevrolet, Inc. v. Gerst,* 112 Md.App. 177, 183, 684 A.2d 868 (1996); *see also* Richard R. Gilbert and Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook, § 8.1, at 164 (1993).

When Howard County moved for judgment, the parties' arguments were primarily directed to whether Smith satisfied his burden of producing evidence that he was "incapacitated."[3] Smith contended not only that the evidence presented to the jury demonstrated that he was incapacitated, but that his victory before the Commission constituted a *prima facie* case.

 Even if minimal evidence was produced to satisfy the first two elements of his claim, we are not persuaded that Smith demonstrated "incapacity" or "disablement," within the meaning of the Maryland Workers' Compensation Act (the "Act"), LE 9–101 *et seq.*

LE § 9–502(a) states:

*"Disablement"* defined.-In this section, "disablement" means the event of a covered employee becoming partially or totally incapacitated:

(1) because of an occupation disease; and

(2) from performing the work of the covered employee in the last occupation in which the covered employee was incuriously exposed to the hazards of the occupational disease.

The question is whether Smith demonstrated that he was partially incapacitated from performing the duties of a patrol officer as of October 5, 2002. *See Waters v. Pleasant Manor Nursing Home,* 361 Md. 82, 98, 760 A.2d 663 (2000) ("the date

---

**3.** Howard County also argued that Smith failed to demonstrate that his injuries were "common hazards affecting police officers" and that Smith "presented no evidence that [his injuries were] inherent [to] the job of a police officer." The parties' arguments, however, were focused on whether Smith demonstrated that he was incapacitated under LE § 9–502.

of injury for determining benefits for an occupational disease is the date of disablement."). In *Helinski v. C & P Telephone Co.*, 108 Md.App. 461, 472, 672 A.2d 155 (1996), we stated:

An incapacity to work in one set of conditions applicable to a particular job does not necessarily indicate or equate with an incapacity to perform the work in an occupation. Whether a disablement suffices to be occupational in scope would depend, at least in part, upon how the occupation is defined and how much of the range of activity fairly included within the occupation is in fact foreclosed to the claimant. If, indeed, the claimant is able to continue to perform reasonably analogous work within the same occupational classification[,] . . . he is not incapacitated 'from performing his work in the last occupation.'

(Citation omitted.)

At trial, Smith relied on his testimony and the taped deposition of his orthopedic surgeon, Dr. Drapkin, to demonstrate that he was disabled. Smith testified: (1) that he suffered pain in his hips from entering and exiting the vehicle; (2) that "several times getting in and out of the car, [his] right knee would give way"; and (3) that his condition was getting worse. He offered two reasons for his retirement on July 1, 2002. First, he stated that he "was having more difficulty getting in and out of the car without the pain." Second, "the fact that we did have a new retirement [schedule] made it easier to accept."

Smith first visited Dr. Drapkin on August 18, 2004. Dr. Drapkin testified that: (1) Smith "had a little loss of motion and a little pain in the front of his hip"; (2) his right knee "had a fair amount of crepitus," which causes "discomfort" in the knee; (4) an x-ray of his right knee "revealed some minimal degenerative changes due to normal wear and tear"; and (5) his condition "need[ed] to be treated or improved if he wants to do this job at all." Dr. Drapkin diagnosed Smith as suffering from "inflamation of both of his hips" and "an internal derangement to his right knee."

On direct examination, Smith testified that a patrol officer's job includes various tasks:

The normal duties are you go to your vehicle, obviously. You start your patrol after you call in service. You're available for dispatch calls. If somebody calls in a complaint, something in progress, they dispatch that; we respond to those. You also do business checks, liquor establishment checks, traffic enforcement, any type of special assignment that may be in your area.... [Y]ou investigate collisions. There's a myriad of things that you do [] as a patrol officer. You handle everything that comes in at the first line of policing.

[COUNSEL]: So, do you spend most of the day in and out of your vehicle?

[SMITH]: Yes.

[COUNSEL]: How many times, would you say, an average sort of day, you're in and out of the vehicle, of the car?

[SMITH]: You'd have to average it out by how much traffic the individual officer does. If you make a traffic stop to run a citation, you normally get in and out of the car for each incident four times.... If you do a foot patrol in a business section, you normally get out once, do your foot patrol, come back, get in your car. If you get a call for a specific complaint, there's no way of knowing how many times you're going to be getting in an out of the car. Because you may have to return to your car, call somebody on the radio if you don't have a portable; in pre-portable days, we had to do that. Get paperwork out of your vehicle and respond back to the complainant; you may have to go back to your vehicle to get equipment out, if you're handling something like a burglary or theft, to process the scene or anything like that. So it's kind of hard to say ... how many times they would get in the car.

Smith also testified that while he performed the duties of a patrol officer, his ballistics vest and the equipment on his gun belt added "twenty to twenty-five pounds of total weight."

Dr. Drapkin's testimony that Smith would need treatment to continue performing the duties of a patrol officer does not indicate that Smith could not perform the duties of a patrol officer on October 5, 2002. Even if Smith "was having more difficulty getting in and out of the car without the pain," no evidence demonstrates that he avoided such activity—partially or completely. "[I]t has been said that an employee is not incapacitated within the intent of the law 'if ... though injured, [he] still has the capacity, the ability to, and does continue to perform his regular work, for which he was employed....'" *Belschner v. Anchor Post Products, Inc.*, 227 Md. 89, 93, 175 A.2d 419 (1961) (citation omitted).

## II. Victory before the Commission

■ Smith argues that, even if he did not satisfy his burden of production before the circuit court, his victory before the Commission constitutes a *prima facie* case of an "occupational disease." Under the circumstances of this case, we disagree.

■ After the Commission issues an order, "[a] party dissatisfied by the action of the Commission may seek review in a circuit court by either proceeding on the record made before the Commission ... or [by] receiv[ing] a new evidentiary hearing and decision before a jury...." *Baltimore County v. Kelly*, 391 Md. 64, 891 A.2d 1103 (2006); *see also Board of Education for Montgomery County v. Spradlin*, 161 Md.App. 155, 166–67, 867 A.2d 370 (2005). LE § 9–745 controls the appellate framework:

(a) *In general.*—The proceedings in an appeal shall:

(1) be informal and summary; and

(2) provide each party a full opportunity to be heard.

(b) *Presumption and burden of proof.*—In each court proceeding under this title:

(1) the decision of the Commission is presumed to be prima facie correct; and

(2) the party challenging the decision has the burden of proof.

(c) *Determination by court.*—The court shall determine whether the Commission:

(1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia;

(2) exceeded the powers granted to it under this title; or

(3) misconstrued the law and facts applicable in the case decided.

(d) *Request for jury trial.*—On a motion of any party filed with the clerk of the court in accordance with the practice in civil cases, the court shall submit to a jury any question of fact involved in the case.

(e) *Disposition.*—

(1) If the court determined that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission.

(2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings.

Subsections (c) and (d), respectively, permit the appeal to be heard by either a judge in the circuit court or a jury. Where, as here, a party elects a jury trial, the proceedings are not "truly" *de novo:*

A true trial *de novo* [is] described as one in which all of the parties [are] put back at square one to begin again just as if the adjudication being challenged had never occurred. Accordingly, "[w]hichever party ... had the burden of production and the burden of persuasion before the Commission would again have those same burdens before the circuit court." An "essential trial *de novo* " differs, however, due to the conditions required by [LE] § 9–745(b)—that the decision of the Commission be presumed as *prima facie* correct, and that the burden of proof be placed on the party attacking the decision.

*Kelly*, 391 Md. at 75 n. 4, 891 A.2d 1103 (quoting *Kelly v. Baltimore County*, 161 Md.App. 128, 137, 867 A.2d 355 (2005) (citation omitted)).

 If the claimant does not prevail before the Commission and elects to proceed in circuit court by way of a jury trial, "the parties retain their initial burdens of proof and persuasion." *Kelly*, 391 Md. at 75, 891 A.2d 1103 (citation omitted). For practical purposes, this means that the "claimant has the burden of producing a *prima facie* case before the trial court, lest he suffer a directed verdict against him, just as he, as the original proponent, had that same burden before the Commission." *General Motors Corp. v. Bark*, 79 Md.App. 68, 79, 555 A.2d 542 (1989).

 If, on the other hand, the claimant prevails before the Commission, "the burden of proof, which was borne by the claimant before the Commission, switches to the employer before the circuit court. 'In such a case, the decision of the Commission is, *ipso facto*, the claimant's *prima facie* case.... Indeed, the successful claimant, as the non-moving party on appeal, has no burden of production.'" *Kelly*, 391 Md. at 75–76, 891 A.2d 1103 (quoting *Bark*, 79 Md.App. at 80, 555 A.2d 542). The claimant cannot, therefore, "suffer a summary judgment (or, perhaps, a directed verdict at the end of the [employer's] case) against it on the ground that it failed to produce a prima facie case." *Spradlin*, 161 Md.App. at 197, 867 A.2d 370.

This switching of burdens, however, is based on the Commission's actual "consideration of conflicting evidence as to essential facts or the deduction of permissible but diverse inferences therefrom...." *Moore v. Clarke*, 171 Md. 39, 45, 187 A. 887 (1936); *see also Kelly*, 391 Md. at 75–77, 891 A.2d 1103. It is the Commission's "solution of such conflict [that] is presumed to be correct," and the party attacking its solution must demonstrate why it is erroneous, if at all. *Moore*, 171 Md. at 45, 187 A. 887.

 But, in the absence of "conflicting evidence as to essential facts" being presented to and resolved by the Com-

mission, there is no presumption of correctness. In such a case, the claimant continues to shoulder the burdens of proof and persuasion as to essential facts necessary to support the claim. *See Kelly,* 391 Md. at 76–77, 891 A.2d 1103; *Moore,* 171 Md. at 45, 187 A. 887. In *Moore,* the Court of Appeals explained:

> The provision that the decision of the Commission shall be "prima facie correct" and that the burden of proof is upon the party attacking the same does not mean, therefore, that if no facts are established before the Commission sufficient to support its decision, that there is any burden of factual proof on the person attacking it, for the decision of the Commission cannot itself be accepted as the equivalent of facts which do not exist, and, in all cases, whether there is evidence legally sufficient to support the decision of the Commission, is necessarily a matter of law to be decided by the court as any other question of law would be.

*Id.* at 45, 187 A. 887. *See also,* 8 Arthur Larson and Lex Larson, *Larson's Workers' Compensation Law,* § 130.06[3][b] (2006) ("Although claimants are aided, in some jurisdictions, by presumptions that help to supply the minimum evidence necessary to support an award, they must first establish the facts required to invoke the presumption.").

In this case, due to a late filing by Howard County, Smith's claim was uncontested. The Commission concluded that Smith suffered an occupational disease based solely on his written statement, which read: "Repeated entering/exiting of police vehicle in performance of duties, wearing gun belt, ballistic vest, etc. Over 26.3 years averaged 800–1000 entries/exits per month." No "conflicting evidence as to essential facts" was presented to the Commission, and thus no deduction of "permissible but diverse inferences [could be made] therefrom." Because "no facts [were] established before the Commission sufficient to support its decision" that Smith suffered an occupational disease, the circuit court was permitted to grant a motion for judgment against the party that prevailed before the Commission.

340

**JUDGMENT AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**