(No. 4275- ▮▮▮▮▮▮)

ALLAN J. BERLETT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 9, 1951.*

HANLEY AND PHILLIPS AND GILLESPIE, BURKE AND GILLESPIE, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

LANSDEN, J.

Claimant, Allan J. Berlett, seeks to recover from respondent under the Workmen's Compensation Act for injuries to his hands that he alleges resulted from accidents that arose out of and in the course of his employment as a highway section helper in the Division of Highways of the Department of Public Works and Buildings.

Claimant alleges that the accidents on which he bases his claim occurred between August 3, 1948, and October, 1948. His first complaint was filed on March 3, 1950, and

an amended complaint, after this Court sustained a motion to dismiss the first complaint, was filed on May 26, 1950. The amended complaint contained allegations sufficient to bring claimant within the jurisdiction of this Court.

Respondent still maintains that this Court is without jurisdiction. In this connection, the proof in the record is hazy, but we feel that certain payments made by respondent to claimant were the equivalent of payments of compensation, and that claimant has filed his complaint within the time required by Section 24 of the Workmen's Compensation Act, and Section 22 of the Court of Claims Act. *United Air Lines* v. *Ind. Com.*, 364 Ill. 346; *Roebuck* v. *State*, 12 C.C.R. 236; *La Mantia* v. *State*, No. 4141, opinion filed October 13, 1950.

The record discloses that claimant is suffering from Dupuytren's Contracture of the hands. Since the record fails to enlighten us as to the nature of this condition, we have made some independent research to ascertain enough information for an intelligent decision of this case.

Reed and Emerson: *The Relation between Injury and Disease* (1938) at page 500 states as follows:

"Dupuytren's contraction or deformity, that is, the permanent contraction of the little, ring, and in extreme cases middle fingers, is a fairly common abnormality. This starts as a slight puckering of the skin and subcutaneous tissues at the base of these fingers, which, slowly increasing in grades, progressively flexes them into the palm of the hand, rendering them more or less useless. This condition always starts in one hand, but eventually both become symmetrically deformed.

"While we know nothing concerning the cause of Dupuytren's contraction, yet there is no evidence that it ever is in any way related to trauma, notwithstanding the fact that in many of the older textbooks injury was given as its chief cause. Since, however, it develops in men engaged in all trades and professions, including occupations which do not necessarily traumatize the palm, since in all cases it develops in exactly the same manner, and since sooner or later both hands practically always become similarly

affected, it is difficult to accept any theory which ascribes it to a single trauma."

Gray's: *Attorneys' Textbook of Medicine* (1949) Vol. 1, pars. 3.25-3.28 has this to say:

"DUPUYTREN'S CONTRACTURE.    P. 3.25

"Dupuytren's contracture is a relatively infrequent disease condition involving the palmar fascia, resulting in major, progressive disability. The condition results from inflammation within the fascia, leading to overgrowth. The tendons are not involved, although they appear as tense cord-like ridges when effort to extend the fingers is made. As time passes on, the fibrous structures within the palm of the hand become further thickened and contract, limiting motion of the fingers, finally producing a claw-like, useless hand.

"Cause    P. 3.26

"The cause is open to considerable question. Although rarely found in people under fifty years of age, heredity is believed to play a part. Certainly a similar condition is not infrequently found in the family of the sufferer. Whether trauma is definitely a cause or not is open to question, although many authorities report increased frequency among those whose occupations require pulling, squeezing or pressing. A history of repeated minor injuries to the palm of the hand or of a single excessive blow is not unusual. However, considering the rarity of the disease, and how many occupations require excessive force to the palm of the hand, it is very questionable if work plays much if any part. The patient looks into the past and all of us can usually recall a blow to the hand within the recent past. Thus it is likely that the blow is charged as a cause, without merit, and since many occupations require more than the average of force to the palm of the hand, it is not surprising that occupation is frequently charged as the causative factor. However, the general consensus of opinion fails to ascribe any cause to Dupuytren's contracture.

"Symptoms    P. 3.27

"The difficulty first begins, as a usual rule, slowly and insidiously, with tightness in the palm, more especially of the ring or little fingers. Neuralgic pains may long continue before evidence of any particular involvement. Ultimately, difficulty in extension of the ring or little fingers becomes apparent, later to include the remaining fingers. One or several fibrous nodes may be found, usually at the base of the little finger, at first not attached to the skin, but later adherent.

"Contractions are late, first involving the proximal phalangeal joints, and later the distal. Finally, the fingers may become fixed. Months or years thereafter, a similar difficulty usually appears in the other hand.

"Treatment    P. 3.28

"Treatment has been unsuccessful except through surgical means. The fact that removal of all trauma of consequence fails to stop progress is a cardinal argument against multiple minor traumata as causative factors. As a usual rule, the unfortunate condition progresses unless the fascia with suffi-

cient skin is surgically removed. This necessitates a large graft of skin and underlying tissue, usually taken from the abdomen, to prevent undue traction at the edges too widely spread to permit apposition by sutures."

On seven occasions between August 3, 1948, and October 19, 1948, claimant operated for several hours a compressed air-operated jack hammer to cut and break out old concrete on Highway 115 in Ford County, Illinois. Since the pounding of the jack hammer aggravated claimant's already existing condition of Dupuytren's Contracture, he naturally complained to his superiors, and in December, 1948, he was sent to Chicago for examination and treatment by Dr. H. B. Thomas, Professor Emeritus of Orthopedics, College of Medicine of the University of Illinois.

Dr. Thomas diagnosed the disease, and conceded that it was aggravated by the pounding of the jack hammer, and recommended that he not be allowed to use the jack hammer any more. Dr. Thomas treated claimant's hands and by February, 1949, he found that such treatment had cured and relieved claimant of all aggravation of the contracture, although such was still present.

Claimant's testimony at the hearing corroborates Dr. Thomas, and, we, therefore, conclude that, the original contracture not having been the result of an accident and all aggravation thereof having been cured, claimant is not entitled to an award.

Hugo Antonacci, Springfield, Illinois, was employed to take and transcribe the testimony at the hearing before Commissioner Summers. His charges amount to $35.40, which charges are reasonable and customary. An award is entered in favor of Hugo Antonacci in the sum of $35.40.

An award to claimant, Allan J. Berlett, is denied.

This award is subject to the approval of the Governor. Ill. Rev. Stat. 1949, Chap. 127, Sec. 180.