731 A.2d 460

**Ronnchey Lynn KING**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY.**

**No. 113, Sept. Term, 1998.**

Court of Appeals of Maryland.

June 10, 1999.

**370**

Kim M. DiGovanni (Thomas V. Mike Miller, Jr., P.A., on brief), Clinton, for petitioner.

Andrew W. Nussbaum (Knight, Manzi, Nussbaum, and La-Placa, P.A., Upper Marlboro), on brief, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

In this case we are called upon to revisit the issue of "mental-mental" claims as occupational diseases under the Maryland Workers' Compensation Act. Ronnchey Lynn King (Petitioner) claims that as a result of her responsibilities as a transportation assistant for the Board of Education of Prince George's County (Respondent), she suffered from a stress-related, compensable occupational disease. We shall hold that

Petitioner's mental illness is not "due to the nature of an employment in which hazards of the occupational disease exist," and, as a result, her illness is not a compensable occupational disease under the Act. Accordingly, we shall affirm the trial court's grant of summary judgment in favor of Respondent.

## I.

On September 14, 1983, Petitioner began her employment with the Board of Education of Prince George's County as a substitute bus driver. In October, 1984, she became a full time bus driver and in October, 1988, she was promoted to auxiliary bus driver. Her duties included driving buses for absent bus drivers and updating "run sheets" on the computer. In that position, she averaged twelve hours per day, five days per week, in addition to some hours working in her home. In June, 1990, she was promoted to assistant foreman. As assistant foreman, she typically worked twelve hours per day, five days per week during the regular school year, including additional hours spent working at home; and, eight hours per day, five days per week during the summer months, for which she was not compensated. In September, 1991, she was promoted to transportation technician, where she worked in excess of twelve hours per day, five days per week, year round. In September, 1992, she was promoted to transportation assistant; according to King, she was then performing her new duties as transportation assistant as well as her old duties of transportation technician. King testified that from September, 1992 to July 1, 1995, she was responsible for many of the duties of transportation management analyst, such as routing and scheduling. In 1995, she was offered the position of transportation management analyst, effective July 1, 1995. After the person hired to perform the job of transportation assistant left after only two days on the job, King testified that she performed the jobs of three people: transportation technician, transportation assistant, and transportation management analyst.

Petitioner began seeing Dr. Ralph Wadeson, a psychiatrist, in March of 1995. In September of 1995, Dr. Wadeson diagnosed Petitioner with somatization disorder[1] and major depression. On October 16, 1995, Petitioner suffered what she characterizes as a breakdown. She left work and "just busted out crying and felt like if [she] didn't lay down [she] was going to die, sick to [her] stomach." Dr. Wadeson noted that her symptoms in October, 1995 included nausea, vomiting, diarrhea, and chest pains, and her symptoms in December, 1995 included pain, headaches, pain in her abdomen, chest and hip, nausea, vomiting, diarrhea, cramping in her gastrointestinal system, loss of libido, balance problems, confusion in her verbalizations, and unsteadiness on her feet. Dr. Wadeson opined that her somatization disorder was "a result of the extreme stress of her job." Dr. Bruce Smoller also evaluated King and concluded that she showed significant personality disorder (somatization disorder and dysthymia) and depression, both of which he felt to be "unrelated to her work situation but alter[ing] her response to her work situation."

Petitioner filed a claim with the Maryland Workers' Compensation Commission on April 1, 1996, alleging that she suffered from an occupational disease. She described the occupational disease as "Nervous Breakdown resulting from three different positions at one time. Also putting in 12–14 hours a day to keep up." After a hearing on July 26, 1996, the Workers' Compensation Commission disallowed Petitioner's claim, finding that "the claimant did not sustain an occupational disease (stress) arising out of and in the course of employment as alleged to have occurred on October 16, 1995."

Petitioner filed a Petition for Judicial Review in the Circuit Court for Prince George's County. Respondent filed a Motion

---

1. According to the Diagnostic and Statistical Manual of Mental Disorders (DSM–IV), "[t]he essential feature of Somatization Disorder is a pattern of recurring, multiple, clinically significant somatic complaints.... The multiple somatic complaints cannot be fully explained by any known general medical condition or the direct effects of a substance." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 446 (1994).

for Summary Judgment, arguing that Petitioner's illness could not qualify as an occupational disease because "[t]here is nothing peculiar, customary or usual about Ms. King's duties as a transportation assistant that makes her more susceptible to stress, anxiety or post-traumatic stress disorder than any other kind of employment or the general population." In opposition to that motion, Petitioner argued that her claim was "the culmination of several years of excessively long and stressful workdays," during which she was "consistently required to remain at work for twelve or more hours each day," "frequently found it necessary to spend several more hours each night in her home on work-related tasks," "was responsible for scheduling the transportation of tens of thousands of Prince George's County school children on a daily basis," and "was expected to perform the jobs of two and three people due to budget cuts, under-staffing, and the inadequate or complete lack of job training received by her co-workers."[2] At the conclusion of the hearing, the court granted Respondent's

---

**2.** Although Petitioner's argument before that court centered around those cases involving "mental-mental" claims, Petitioner also argued at the conclusion of the hearing that the claim was properly classified as a "mental-physical" claim:

> I would just point out for the record, also, that this is not purely a mental disorder claim. She went first to see the psychiatrist in March of '95, and by September of 1995 the psychiatrist had related a bowel disorder that she was suffering as a result of the stress for which she was treated and for which claims were made to the stress, to the somatization disorder.
>
> So you see mental disorder, physical problems, and mental/physical, depending on what preceded what. And that seems to make a difference in the case. Although, in the state of Maryland, this issue has not been addressed. But this is a mental subsequent physical claim.

The line between a "mental-physical claim" and a "mental-mental claim" may, in some cases, be a blurry one. *See Belcher v. T. Rowe Price*, 329 Md. 709, 621 A.2d 872 (1993) (Rodowsky, J., concurring) (disagreeing with the majority's characterization of a claim as "mental-mental" instead of "physical-mental"). Petitioner does not argue before this Court that her claim is a "mental-physical" one. In Petitioner's brief, she characterizes her claim as a "stress-induced mental injury" and a "purely mental disease." Regardless of how Petitioner's claim is characterized, the result remains the same. *See* discussion *infra*, pages 14–15.

Motion for Summary Judgment, finding that Petitioner did not sustain an occupational disease arising out of and in the course of her employment.[3]

Petitioner appealed to the Court of Special Appeals. 123 Md.App. 73, 716 A.2d 1077 (1998). The intermediate court affirmed, initially observing that the disposition of the case was dependent on whether the case was governed by *Davis v. Dyncorp*, 336 Md. 226, 647 A.2d 446 (1994), or *Means v. Baltimore County*, 344 Md. 661, 689 A.2d 1238 (1997). *Id.* at 82, 716 at 1082. After reviewing these cases, the court determined that Petitioner's illness did not qualify as a compensable occupational disease under the Act. *Id.* at 88, 716 A.2d at 1084. The court reasoned:

> Under *Means*, a stress-induced mental disorder may constitute a compensable occupational disease only if the stress is created by conditions particular and peculiar to the general nature of the employment. The type of difficult working conditions under which appellant worked—e.g., long hours, uncooperative coworkers, unreasonable supervisors, insufficient resources—are pervasive across many types of occupations and are not uniquely characteristic of any particular occupation. Further, as the trial court observed, there was no evidence in this case to suggest that the stressful conditions were a result of anything other than mismanagement of the position; such conditions were not, as in *Means*, an

---

**3.** After counsel for Petitioner described to the court Petitioner's job responsibilities, the court stated:

THE COURT: As I said ... that is too much for one person. But the job itself is not that. They are putting too much on one person, from your description of what went on.

COUNSEL: Correct.

THE COURT: But it is not the job. It is how Prince George's County sees fit to run the job.

COUNSEL: You are saying it is not particular to the position that she held because that position, managed properly in other Counties, would not have resulted in similar circumstances?

THE COURT: That is exactly what I'm saying.

inseparable and unavoidable characteristic of the job duties and responsibilities.

*Id.* at 84, 716 A.2d at 1083.

We granted certiorari to consider the following question:

Whether the Court of Special Appeals erred in affirming the trial court's decision to grant summary judgment in favor of the Board of Education of Prince George's County based on its opinion that Petitioner's stress-related disorder is not compensable as an occupational disease as defined in Section 9–502 of the Labor and Employment Article of the Annotated Code of Maryland.

## II.

According to Petitioner, the circuit court erred in granting summary judgment because the facts support that (1) Petitioner suffered an occupational disease as the result of and in the course of her employment; (2) the occupational disease caused Petitioner to become incapacitated; (3) the occupational disease that caused Petitioner's disability was due to the nature of an employment in which hazards of the occupational disease exist; and (4) on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of Petitioner. Petitioner argues that whether the nature of Petitioner's employment involved a hazard of contracting somatization disorder and/or major depression is a question of fact that should have been decided by a jury after considering all of the evidence. Petitioner contends that the stressful conditions under which she worked were inseparable and unavoidable characteristics of her job, and that her mental injury gradually developed over time as a result of these conditions. Petitioner argues that despite the Court of Special Appeals holding that Petitioner's working conditions are pervasive across many types of occupations, "ensuring the safe transport of thousands of school children on a daily basis, pacifying irate parents and principals due to bus overcrowding, and being forced to work long hours while performing the duties of three different positions are not pervasive across many types of occupations, and therefore, are

uniquely characteristic of Petitioner's employment." Petitioner contends that nothing in the Act requires that the hazard of the occupational disease be uniquely characteristic of a particular *occupation;* the hazard must simply be uniquely characteristic of the specific *job* in which Petitioner is employed. Petitioner argues that "[w]hile somatization disorder and/or major depression may not be a hazard incident to employment by any other board of education, it is a hazard incident to serving as an employee of the transportation department of the Board of Education of Prince George's County."

Respondent counters that Maryland law requires that in order for an occupational disease to be compensable, it must be created by conditions particular to the general nature of the employment, and not simply the specific job in which the claimant is employed. According to Respondent, there is nothing peculiar, customary or usual about the job of a transportation assistant that makes an employee more susceptible to stress or somatization disorder than if the employee were working in any other field. Respondent concludes that there is no evidence to suggest that the stress or somatization disorder allegedly suffered by Petitioner is the usual and customary result of working as a transportation assistant.

### III.

Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81, 83 (1996). On review, we must determine whether the trial court was legally correct in granting summary judgment. *Id.,* 677 A.2d at 83.

We start with the statutory framework of the Maryland Workers' Compensation Act. *See* Title 9 of the Labor and Employment Article of the Annotated Code of Maryland (1991 Repl.Vol., 1998 Supp.).[4] In order for an illness to be compen-

---

4. Unless otherwise indicated, all statutory references herein shall be to Title 9 of the Labor and Employment Article of the Annotated Code of Maryland (1991 Repl.Vol., 1998 Supp.).

sable as an occupational disease, a claimant must (1) qualify the particular illness as an occupational disease under § 9–101(g); and (2) satisfy the compensability test of § 9–502(d). Occupational disease is defined in § 9–101(g) as "a disease contracted by a covered employee: (1) as the result of and in the course of employment; and (2) that causes the covered employee to become temporarily or permanently, partially or totally incapacitated." Section 9–502(d) provides in pertinent part:

(d) *Limitation on liability.*—An employer and insurer are liable to provide compensation ... only if:

(1) the occupational disease that caused the death or disability:

(i) is due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed before the date of disablement; or

(ii) has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed before the date of disablement; and

(2) on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of the covered employee.

The limitations imposed by § 9–502(d) seek to ensure that only those diseases directly caused by the employment are compensable. *Davis v. Dyncorp,* 336 Md. 226, 236, 647 A.2d 446, 451 (1994).

The language of the Act does not distinguish between physical and mental diseases, and the Act fails to set forth separate standards specific to mental claimants. In the absence of such language, this Court recently has been faced with the issue of whether, and under what circumstances, purely mental diseases may be compensable under the Act as occupational diseases.[5] *See Means v. Baltimore* County, 344

---

5. According to Professor Larson, this relatively new and controversial topic in workers' compensation law has been spurred by the nature of the modern workplace:

Md. 661, 689 A.2d 1238 (1997); *Davis v. Dynacorp*, 336 Md. 226, 647 A.2d 446. This Court first had occasion to analyze "mental-mental" claims in the context of occupational diseases in *Davis v. Dyncorp*.[6] Davis, a computer operator, alleged that he was continually subjected to serious harassment by his co-workers. *Id.* at 228, 647 A.2d at 447. He claimed that as a result, he experienced restlessness, sleeping problems, headaches, and developed post-traumatic stress disorder, which

---

> It is axiomatic that during the past half-century there has been a broad transformation within the American workplace from a traditional emphasis upon manufacturing and agriculture to a new emphasis upon the exchange of information. And while the workplace can still be a risky site in which to spend one's time, more and more these days American workers are not so much concerned with severed limbs, herniated discs, and byssinosis injuries and diseases of the manufacturing environment—as they are with the mounting levels of employment-related stress—perceived and actual.
>
> LARSON'S WORKERS' COMPENSATION LAW § 42.25 (1998).

**6.** Prior to *Davis v. Dyncorp*, 336 Md. 226, 647 A.2d 446 (1994), this Court in *Belcher v. T. Rowe Price*, 329 Md. 709, 621 A.2d 872 (1993), considered whether a mental injury could qualify as a compensable accidental injury under the Workers' Compensation Act. Adopting the standard from tort law adopted by this Court in *Vance v. Vance*, 286 Md. 490, 408 A.2d 728 (1979), the *Belcher* court held that "an injury under the Act may be psychological in nature if the mental state for which recovery is sought is capable of objective determination." 329 Md. at 745–46, 621 A.2d at 890. The court stated:

> In the light of the language of the Act, the philosophy underlying it, and the purposes behind it, we believe that modern times call for the concept of 'physical injury,' which we have adopted with respect to emotional distress in tort actions to apply to 'personal injury' under the Act.... We have come to appreciate that a mind may be injured as well as a body maimed. A person's psychic trauma does not vary depending upon the type of legal action in which the harm is scrutinized. Disabilities are *not lessened* because compensation is pursued by way of the Act rather than by way of damages sought in a tort action. The inability to work and the loss of earning power are the same.

*Id.* at 738, 621 A.2d at 886. The Court emphasized, however, that "a mere showing that a mental injury was related to *general conditions* of employment, or to incidents occurring over an extended period of time, is not enough to entitle the claimant to compensation. The mental injury must be precipitated by an accident, i.e., an unexpected and unforeseen event that occurs suddenly or violently." *Id.* at 739–740, 621 A.2d at 887 (quoting *Sparks v. Tulane Med. Ctr. Hosp. & Clinic*, 546 So.2d 138, 147 (La.1989)).

prevented him from returning to work. *Id.*, 647 A.2d at 447. We held that Davis's claim did not constitute a compensable occupational disease under § 9–502(d)(1)(i) because the alleged disease was not " 'due to the nature of an employment in which hazards of the occupational disease exist.' " *Id.* at 236, 647 A.2d at 451 (quoting § 9–502(d)(1)(i)). Writing for the Court, Judge Chasanow explained:

> Given its ordinary meaning, the word 'nature' means '[a] kind, sort, type, order; general character.' Thus, the question becomes whether mental disease caused by his job harassment may be reasonably characterized as due to the general character of Davis's employment. We believe that it cannot.
>
> ... We agree with the circuit court's observation that '[h]arassment by fellow employees is n[ot] a hazard within the nature of the employment of a computer data operator....' We see nothing peculiar to Davis's duties as a computer operator that made him more susceptible to harassment than in any other kind of employment.

*Id.* at 236–237, 647 A.2d at 451 (alterations and second omission in original) (citation omitted). Because, as a matter of law, Davis's condition did not meet this threshold inquiry, *i.e.*, the mental disease allegedly caused by his job harassment could not be reasonably characterized as due to the general character of his employment as a computer operator, we did not reach the issue of whether gradually resulting purely mental diseases could ever be compensable as occupational diseases. *Id.* at 238, 647 A.2d at 452. We did, however, state:

> [W]e are not willing to rule out the possibility that some gradually resulting, purely mental diseases could be compensable occupational diseases or that there may be circumstances where work-induced stress may result in a compensable occupational disease. Today, we merely hold that the mental disease resulting from the harassment encountered by Davis was not due to the nature of his employment.

*Id.* at 238–39, 647 A.2d at 452.

We reached this issue in *Means v. Baltimore County*, 344 Md. 661, 689 A.2d 1238 (1997). We held in *Means* that post-

traumatic stress disorder (PTSD) suffered by a paramedic may be compensable as an occupational disease under the Maryland Workers' Compensation Act, if the claimant could satisfy all the statutory criteria for qualification. *Id.* at 670, 689 A.2d at 1242. Means claimed that she suffered from PTSD as a result of her work responsibilities as a paramedic, which included responding to emergency calls and rendering aid at the scenes of accidents and other emergencies. *Id.* at 662, 689 at A.2d 1238. Means contended that her PTSD was caused by a series of traumatic events. *Id.*, 689 A.2d at 1238. First, she responded to a particularly severe accident, at which she provided aid and declared five teenagers dead at the scene. *Id.*, 689 A.2d at 1238. A few days later, she responded to another emergency call, with equally serious injuries and fatalities. *Id.*, 689 A.2d at 1238. Approximately five years later, she responded to a particularly gruesome motorcycle accident at which the victim's scalp had been torn away from his skull. *Id.* at 663, 689 A.2d at 1239.

We concluded that, unlike the occupation of computer operator in *Davis*, the occupation of paramedic was " 'an employment in which hazards of the occupational disease exist.' " *Id.* at 670, 689 A.2d at 1242 (quoting § 9–502(d)(1)(i)). We first applied the *Davis* inquiry of whether Means's asserted PTSD may be reasonably characterized as due to the general character of her employment as a paramedic. *Id.* at 670–671, 689 A.2d at 1242–43. We held that "[u]nlike the computer operator in Davis who divided his time between programming computers and reading manuals, Means's employment as a paramedic exposed her to events that could potentially cause PTSD." *Id.* at 671, 689 A.2d at 1242–43. We further concluded that PTSD may be compatible with the general character of occupational disease, described as " 'some ailment, disorder, or illness which is the expectable result of working under conditions naturally inherent in the employment and inseparable therefrom, and is ordinarily slow and insidious in its approach.' " *Id.* at 671, 689 A.2d at 1243 (quoting *Foble v. Knefely*, 176 Md. 474, 486, 6 A.2d 48, 53 (1939) and citing *Davis*, 336 Md. at 233, 647 A.2d at 449, and *Lovellette v.*

*Mayor and City Council of Baltimore,* 297 Md. 271, 280, 465 A.2d 1141, 1146 (1983)). We held that if the claimant could successfully prove that PTSD met the statutory requirements, PTSD was not as a matter of law excluded from compensable occupational diseases; the non-physical nature of Means's claim did not *per se* exclude her from coverage under the Act. *Id.* at 673–74, 689 A.2d at 1244.

Though we did not have occasion in either *Davis* or *Means* to consider whether mental occupational disease claims and physical occupational disease claims are analyzed under an identical framework, we made clear that mental disease claims must, at a minimum, satisfy those standards applicable to physical claims. Every occupational disease claim, whether mental or physical, must satisfy the statutory standard of § 9–502(d)(1)(i), *i.e.,* the alleged disease must be "due to the nature of an employment in which hazards of the occupational disease exist."

King can not satisfy this threshold requirement. Her evidence and arguments before both the Commission and the circuit court indicate that she was an overworked employee in a mismanaged position. She presented no direct evidence that the stress-related illnesses of somatization disorder and/or major depression were somehow inherent in the nature of the position of transportation assistant. Nor did she present evidence that these illnesses would not occur in equal frequency in any other occupation in which employees were overworked and/or mismanaged.

Instead of presenting evidence of the hazards inherent in the occupation of transportation assistant, King presented evidence of the hazards in her specific job. Such evidence is consistent with her claim that when the Legislature used the phrase "due to the nature of an employment in which hazards of the occupational disease exist," it intended to equate "employment" with a specific job. This argument is contrary to Maryland law. "Employment" in the context of § 9–502(d)(1)(i) does not mean the specific job in which the person is working; it means the profession or general occupation in

which the person is engaged. *See Means,* 344 Md. at 671, 689 A.2d at 1242 ("We conclude that Means's asserted PTSD may be reasonably characterized as due to the *general character of her employment as a paramedic* ") (emphasis added); *Davis,* 336 Md. at 237, 647 A.2d at 451 ("We agree with the circuit court's observation that '[h]arassment by fellow employees is n[ot] a hazard *within the nature of the employment of a computer data operator* '") (emphasis added) (alterations in original); *Victory Sparkler & Specialty Co. v. Francks,* 147 Md. 368, 379, 128 A. 635 (1925) ("[An occupation or industry disease] has its origin *in the inherent nature or mode of work of the profession or industry,* and it is the usual result or concomitant.") (emphasis added). Because King failed to present any evidence that somatization disorder and/or major depression may be reasonably characterized as due to the general character of her employment as a transportation assistant, the circuit court properly granted Respondent's motion for summary judgment.

**JUDGMENT AFFIRMED WITH COSTS.**