MARLON RAY HOLLINGSWORTH Plaintiff,
v.
GOODYEAR TIRE & RUBBER CO. D/B/A KELLY SPRINGFIELD TIRE CO., Employer, LIBERTY MUTUAL GROUP, Carrier, Defendants.
No. COA06-905
Court of Appeals of North Carolina.
Filed May 1, 2007
This case not for publication
Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellee.
Cranfill, Sumner & Hartzog, LLP, by Meredith L. Taylor, for defendant-appellants.
BRYANT, Judge.
Goodyear Tire & Rubber Co. d/b/a Kelly Springfield Tire Co. (defendant-employer) and Liberty Mutual Group (defendant-carrier) appeal from an Opinion and Award entered 1 March 2006 by the Full Commission, awarding Marlon Ray Hollingsworth (plaintiff-employee) all medical expenses incurred as a result of his occupational disease (Dupuytren's contractures) and reasonable attorney's fees, reserving the issue of any temporary and total disability for future determination. Plaintiff is right-handed and has been employed by defendant as a first stage tire builder, working six days per week, since 15 May 1978. He has bilateral Dupuytren's contractures, which are greater on his right hand than his left. Plaintiff's job usually requires two minutes to build a first stage tire and he builds approximately one hundred fifty tires per shift. Plaintiff's duties require almost constant use of his hands during production. The first stage tire builder must cut and re-cut the rubber three to four times per tire with a knife. The knife used is approximately twelve inches long and has a wooden handle. The knife also has a round part with a hook in the middle of the blade, which allows the tire builder to hook the rubber and then slice it. Plaintiff testified that while using the knife, its handles press against both middle fingers and his ring and small finger on his right hand. The scissors used by plaintiff are gripped with his right hand every minute and a half to every two minutes throughout a shift. Plaintiff testified that the cutting required creates pressure in the palms of his hands that extends towards the little and ring fingers which is where Dupuytren's contractures have appeared. Plaintiff first noticed the Dupuytren's contractures approximately four to five years ago, when he began using another tool, a hand stitcher.
On 22 July 2003, plaintiff was sent by defendants' plant doctor to Dr. Douglas McFarlane, a board certified orthopedic surgeon. At that time, he reported a constant sharp pain with throbbing and stabbing sensations in his hands. Plaintiff also reported weakness in his hands and that his condition was getting progressively worse. Following his examination, Dr. McFarlane diagnosed plaintiff as having Dupuytren's nodules which is a condition that is associated with a similar sort of thickening on the sole of the foot, primarily in the arch area. Dr. McFarlane also examined his feet and found that plaintiff did have a thickening in the arch of both feet (also known as "plantar fibromatosis"). With his right hand, plaintiff demonstrated the inability to fully extend by approximately five to ten degrees on both his small and ring fingers. At that time, Dr. McFarlane recommended surgery and anticipated plaintiff would be able to return to work without restrictions.
On 12 March 2004, Dr. McFarlane responded to defendant-carrier's inquiry regarding causation. In his correspondence, Dr. McFarlane noted the precise cause of Dupuytren's contractures was unknown, but that there was a genetic component to developing the disease, as it is more commonly seen in northern Europeans. Dr. McFarlane also noted that Dupuytren's contractures was common in patients who have experienced repetitive micro-traumas (any activity involving either a vibrating type action or the use of the hands to firmly grip on a repetitive basis  15 times an hour  that causes bruising of the tissues) to their hands and that persons performing heavy or repetitive work with their hands were at risk for developing this condition. Dr. McFarlane testified that for the development of Dupuytren's contractures, a triggering event is required. Dr. McFarlane based his opinion on his treatment of multiple tire builders who worked for defendant and having treated manual workers who developed Dupuytren's contractures. He further testified plaintiff's work for defendant was an adequate trigger for development or significant aggravation of his Dupuytren's contractures and placed him at an increased risk for the development of Dupuytren's contractures than members of the general public not similarly employed.
On 27 October 2003, plaintiff was examined by Dr. Peter G. Dalldorf, a board certified orthopedic surgeon. Plaintiff reported to Dr. Dalldorf that he continued to work as a tire builder for defendant but that he was experiencing problems with daily activities and his work duties due to the contractures. Plaintiff reported experiencing constant severe pain when he was using his hands, and that his condition made it difficult for him to sleep. Dr. Dalldorf's examination of plaintiff revealed contractures in both of plaintiff's hands with some palpable cords (diseased tissue) in his palms, more so on his right hand. Plaintiff also displayed contractures about his right ring finger with a twenty-degree contracture at the joint located at the base of the finger. Plaintiff's right middle finger had approximately a ten-degree contracture and his right small finger had a forty-degree contracture. On his left hand, plaintiff had a ten-degree contracture on his small finger with palpable cords in his palm. Dr. Dalldorf diagnosed plaintiff as having Dupuytren's contractures of both hands and did not examine plaintiff's feet. Dr. Dalldorf testified: it was generally understood and accepted in the medical community that the disease is caused by a combination of inherited factors and environmental factors, such as repetitive trauma to the hands; to a reasonable degree of medical certainty, after having observed plaintiff perform his job on videotape, plaintiff's work as a tire builder placed him at an increased risk of contracting Dupuytren's contractures; and regarding medical studies relating to this disease, Dr. Dalldorf contends Dupuytren's contractures are more common in people that have heavy labor jobs.
Dr. George Edwards, a board certified orthopedic surgeon and certified hand specialist, was also consulted regarding plaintiff's condition. Dr. Edwards did not examine plaintiff, and initially rendered his opinions based on review of plaintiff's medical records and a video of someone other than plaintiff performing the first stage tire builder job. Dr. Edwards testified there was no evidence that plaintiff's job contributed to or caused the development of Dupuytren's contractures. Dr. Edwards based his medical opinion on the fact that plaintiff had the same problem with his feet. His opinion remained unchanged after observing a video of plaintiff performing his job duties.
Plaintiff filed a Workers' Compensation claim in July 2003 at the onset of "Dupuytren's [contractures] of the hands as a result of his employment as a tire builder for defendant." Defendants denied that plaintiff suffered any such condition as a result of his employment. The deputy commissioner determined that plaintiff suffered from the occupational disease of Dupuytren's contractures as a result of his employment with defendant, and that the condition was compensable. Defendants appealed to the Full Commission.
On 9 May, 2006, a divided panel of the Full Commission entered an Opinion and Award in which it determined that plaintiff sustained a compensable occupational disease in the form of Dupuytren's contractures as a result of his employment with defendant. One commissioner dissented, concluding plaintiff's expert medical testimony on the issue of causation was insufficient as a matter of law to meet the standards set forth by our Supreme Court in Holley v. Acts, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003). Defendant now appeals to this Court.
The dispositive issue on appeal is whether the Full Commission's findings of fact with respect to medical causation of plaintiff's Dupuytren's contractures are supported by competent evidence which, in turn, support its conclusion that plaintiff's employment caused or significantly contributed to his condition. Defendant claims the testimony of Drs. McFarlane and Dalldorf does not rise beyond the realm of speculation and is insufficient to prove causation. We disagree.
"Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005). If any competent evidence supports a finding, viewed in the light most favorable to the plaintiff, it is conclusively established, even if the evidence would support a contrary finding. Deese v. Champion Int'l Corp., 352 N.C. 109, 115, 530 S.E.2d 549, 552-53 (2000).
To prove an occupational disease under N.C. Gen. Stat. § 97-53 our Supreme Court has held the disease must be:
(1) characteristic of persons engaged in the particular trade or occupation in which the plaintiff is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be a causal connection between the disease and the plaintiff's employment. Rutledge v. Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). . . . [E]vidence tending to show that the employment simply aggravated or contributed to the employee's condition goes only to the issue of causation, the third element of the Rutledge test. Regardless of how an employee meets the causation prong . . . the employee must nevertheless satisfy the remaining two prongs of the Rutledge test by establishing that the employment placed him at a greater risk for contracting the condition than the general public.
Chambers v. Transit Mgmt., 360 N.C. 609, 612-13, 636 S.E.2d 553, 556 (2006) (quotation marks omitted) (citing Rutledge, 308 N.C. at 94, 301 S.E.2d at 365). '[T]he Commission chooses what findings to make based on its consideration of the evidence[, and this Court] is not at liberty to supplement the Commission's findings[.]" Pitillo v. N.C. Dep't of Envtl. Health & Natural Res., 151 N.C. App. 641, 644, 566 S.E.2d 807, 810 (2002) (quotation omitted).
"Doctors are trained not to rule out medical possibilities no matter how remote." Holley, 357 N.C. at 234, 581 S.E.2d at 754. A "mere possibility has never been legally competent to prove causation." Id. However, to establish the necessary causal relationship for compensation under the Act, "the evidence must be such as to take the case out of the realm of conjecture and remote possibility." Gilmore v. Hoke County Board of Education, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942); see also Cannon v. Goodyear Tire & Rubber Co., 171 N.C. App. 254, 264, 614 S.E.2d 440, 446-47, disc. review denied, 360 N.C. 61, 621 S.E.2d 177 (2005) (Probability, not possibility is the standard required for expert testimony to constitute competent evidence of causation.).
Dr. McFarlane testified plaintiff's work for defendant was an adequate trigger for development or significant aggravation of his Dupuytren's contractures. Building tires placed plaintiff at an increased risk for the development of Dupuytren's contractures than members of the general public not similarly employed. Dr. McFarlane based his opinion on his past treatment of multiple tire builders who worked for defendant and having treated manual workers who developed Dupuytren's contractures. Dr. McFarlane testified:
Dr. McFarlane: [W]hat I'm saying is that there is a medical theory [] that there's a genetic predisposition [to developing Dupuytren's contractures] but in the majority of cases it requires a trigger. One of the triggers is repetitive microtrauma, again this is a medical theory. And that type of job that [plaintiff] does . . . would qualify as one of these medical triggers.
. . .
Q.: basically this is your suspicion?
Dr. McFarlane: Right. Well, it's my medical opinion, yes.
Dr. Dalldorf, also a board certified orthopedic surgeon, testified that it was generally understood and accepted in the medical community that the disease is caused by a combination of inherited factors and environmental factors, such as repetitive trauma to the hands. Dr. Dalldorf further testified to a reasonable degree of medical certainty, after having observed plaintiff perform his job on videotape, that plaintiff's work as a tire builder placed him at an increased risk of contracting Dupuytren's contractures.
Q.: Would [doing plaintiff's job] place him at an increased risk of the 
Dr. Dalldorf: Development of Dupuytren's?
Q.: ____ development of the Dupuytren's?
Dr. Dalldorf: Yes, I would say it would.
Q.: And is your opinion within a reasonable degree of legal medical certainty . . .?
Dr. Dalldorf: Yes ,that would be my opinion. But as you know, it's fairly controversial. But my opinion would be, yes, that that [sic] would be a major contributing factor.
With respect to medical studies relating to Dupuytren's contractures, Dr. Dalldorf further testified the disease is more common in people that have heavy labor jobs.
Dr. Edwards also testified, although he did not physically examine plaintiff. Dr. Edwards was qualified as a board certified orthopedic surgeon and a certified hand specialist. Dr. Edwards testified there was no evidence that plaintiff's job contributed to or caused the development of Dupuytren's contractures. Dr. Edwards based his medical opinion on the fact that plaintiff had the same problem with his feet; this opinion remained unchanged after having observed a video of plaintiff performing his job duties.
Here, the Commission addressed the conflicting testimony of the respective experts and made findings of fact accordingly. Specifically, the Commission made findings of fact that stated Dr. Edwards "never examined plaintiff, and initially rendered his opinions based upon a review of plaintiff's medical records and a videotape of someone other than plaintiff performing the first stage tire builder job . . . that there was no evidence that plaintiff's job contributed to or caused the development of his Dupuytren's contractures[.]" The Commission further found that "[b]ased upon the totality of the credible medical evidence of record, the Full Commission gives greater weight to the opinions expressed by Dr. McFarlane and Dr. Dalldorf, than those of Dr. Edwards, despite his status as a certified hand specialist. Dr. Edwards never examined or treated plaintiff, as opposed to Dr. Dalldorf and particularly Dr. McFarlane" and "[t]he greater weight of the medical evidence shows that plaintiff's employment with defendant-employer caused or significantly contributed to the development of his Dupuytren's contractures."
Here the evidence provides that plaintiff had no history of Dupuytren's contractures prior to his employment with defendant; plaintiff reported the problem with his hands to his employer and defendants sent him to Dr. McFarlane for treatment of his problem. The expert medical testimony of Drs. McFarlane and Dalldorf has taken "the case out of the realm of conjecture and remote possibility." The findings of the Full Commission as to medical causation of plaintiff's Dupuytren's contractures are supported by competent evidence which support the conclusion that plaintiff's employment caused or significantly contributed to his condition. Affirmed.
Judges McCULLOUGH and LEVINSON concur.
Report per Rule 30(e).